United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 17, 2006**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 04-10796

_____

LAWRENCE J. WARFIELD, as the Receiver for
Resource Development International, et al.,

Plaintiff-Appellee,

versus

BOB L. BYRON; et al.,

Defendants;

CHARLES LITTLEWOOD,

Defendant-Appellant.

*************************************************************

_____

No. 04-11041

_____

LAWRENCE J. WARFIELD, as the Receiver
for Resource Development International, et al.,

Plaintiff-Appellee,

versus

BOB L. BYRON; et al.,

Defendants;

LARRY P. JOHNSON,

Defendant-Appellant.

Appeals from the United States District Court
for the Northern District of Texas

Before JONES, Chief Judge, and DeMOSS and OWEN, Circuit Judges.

EDITH H. JONES, Chief Judge:

Two investors in a Ponzi scheme were sued for fraudulent transfers because they received significantly more funds from the scheme than they invested. Further, when granting summary judgment for the receiver of the entities involved in the scheme, the district court gratuitously declared that the judgments against the investors would be nondischargeable in bankruptcy.

On appeal, the receiver concedes that the district court's premature ruling on nondischargeability must be vacated, and we concur. Because the investors' other challenges to the judgments are meritless, including the contention that they may not be sued as transferees under the UNIFORM FRAUDULENT TRANSFER ACT, we AFFIRM the monetary judgments and VACATE the order declaring nondischargeability of the judgments in bankruptcy.

## I. PROCEDURAL BACKGROUND

In an underlying lawsuit styled SEC v. Res. Dev. Int'l, Civ. No. 3:02-CV-0605 (N.D. Tex.), the Securities and Exchange Commission ("SEC") alleged that James Edwards, David Edwards, and others operated Research Development International, LLC and related entities (collectively "RDI") as a fraudulent Ponzi scheme. The

district court in Resource Development appointed a Receiver, Lawrence J. Warfield, for RDI.

On June 28, 2002, the district court in Resource Development authorized the Receiver to sue a number of individuals and entities to recoup receivership assets. Littlewood and Johnson were thus named as defendants in a case alleging, inter alia, claims under the UNIFORM FRAUDULENT TRANSFER ACT ("UFTA").

Littlewood was served on August 11, 2002. His motions, filed with counsel, to dismiss the original complaint and then the Receiver's First Amended Complaint, were denied. Littlewood filed no answer to the Receiver's First Amended Complaint, and he raised no affirmative defenses other than those disposed of in his motions to dismiss. He responded to the Receiver's discovery requests, but, due to a lack of funds, soon allowed his counsel to withdraw.

The Receiver moved for partial summary judgment against Littlewood on January 30, 2004. That same day he served a copy of the motion, the brief, and the supporting appendix on Littlewood via regular mail at the address Littlewood's counsel had indicated as Littlewood's last known residence. Littlewood never responded to the Receiver's motion and now asserts that he never received the motion or any of the accompanying documentation. Accepting the Receiver's notice of default, the district court granted a partial summary judgment and certified it as final pursuant to FEDERAL RULE OF CIVIL PROCEDURE 54(b).

Littlewood obtained new counsel within days and sought relief from the judgment pursuant to FEDERAL RULE OF CIVIL PROCEDURE 60(b). His supporting affidavit stated that he had a meritorious defense to the Receiver's claims, but he contested no fact other than the amount he invested. The district court denied Littlewood's motion.

Johnson, like Littlewood, was sued for receiving fraudulent transfers. The Receiver's motion for partial summary judgment against Johnson made four points: (1) The Receivership Entities operated as fraudulent Ponzi schemes, which were insolvent from their inception; (2) Johnson received fraudulent transfers in bad faith; (3) Johnson received a net amount of $1,573,790.50 from the Receivership Entities; and (4) "Facilitating" investments in the RDI Trading Program did not provide any reasonably equivalent value in exchange for the money Johnson received. Johnson contested summary judgment asserting genuine issues of material fact. The district court found to the contrary, granted the motion for partial summary judgment, and certified it as final.

Littlewood's and Johnson's separate appeals have been consolidated for administrative convenience.

## II. FACTUAL BACKGROUND

In 1999, some former business associates contacted Littlewood about an offshore trading program (RDI) paying returns of at least four percent per month. Littlewood was told that the

4

income was "manufactured by the government." Littlewood initially invested ten thousand dollars, and after receiving substantial returns, increased his investment. Littlewood then furnished one of the trading program facilitators with a list of business contacts whom they could solicit. Littlewood subsequently contacted parties identified by the facilitator as interested, and he participated in the solicitations. Littlewood performed no other services for RDI, but during his involvement with RDI, he received returns far in excess of his investments.

Johnson first became acquainted with David and James Edwards, two of RDI's principals, in the mid-1990s when Johnson invested in public payphone companies. While most investors lost money on the companies, Johnson received an extraordinarily high return that he attributed to the Edwardses' efforts. The Edwardses subsequently approached Johnson about investing in one of the entities associated with the current Ponzi scheme, Pacific International Limited Partnership ("PILP"), and at some point in 1998, Johnson invested ten thousand dollars in PILP. Johnson understood that PILP operated in conjunction with Dennel Finance, Ltd. ("Dennel") and Ben Cook, and that Dennel and Cook would put his PILP investment "into play."

In March 1999, the SEC obtained an injunction against Dennel and Cook and appointed Warfield as Receiver for Dennel and more than thirty related entities. When Dennel was adjudicated a Ponzi scheme, the Edwardses began to offer RDI and PILP as new,

5

independent investments. Although Johnson apparently believed that RDI was independent of Dennel, he knew before he invested in RDI that: (1) The SEC placed Dennel in receivership; (2) RDI was offered by the same people who had operated PILP through Dennel; (3) RDI's contracts were nearly identical to the illegal Dennel and PILP contracts; (4) each RDI participant was required to open an offshore account for receipt of all commission transfers; and (5) RDI was under investigation by the SEC.

Despite the warning signs, Johnson continued to invest in RDI and began to recruit other investors, activities for which he received substantial payments from RDI. Because the RDI Trading Program never earned any legitimate income, the "commissions" and "earnings" received by Johnson were funds skimmed from later investors' payments into the Ponzi scheme.

### III. DISCUSSION

Littlewood argues that the district court improperly denied him relief under Rule 60(b), and both Littlewood and Johnson contend that the district court erred by granting summary judgment.

### A. Littlewood's Rule 60(b) Motion

Littlewood argues that the district court abused its discretion by not granting him Rule 60(b) relief from the default judgment. He contends that he did not receive actual notice of the summary judgment proceeding and, as a meritorious defense, that he was not a knowing participant in the alleged fraudulent transfers

6

by other defendants. We review the district court's denial of a Rule 60(b) motion for an abuse of discretion. <u>Seven Elves, Inc. v. Eskenazi</u>, 635 F.2d 396, 402 (5th Cir. 1981). "[T]o overturn the district court's denial . . . it is not enough that a grant of the motion might have been permissible or warranted; rather, the decision to deny the motion must have been sufficiently unwarranted as to amount to an abuse of discretion." <u>Fackelman v. Bell</u>, 564 F.2d 734, 736 (5th Cir. 1977). However, "where denial of relief precludes examination of the full merits of the cause, even a slight abuse may justify reversal." <u>Eskenazi</u>, 635 F.2d at 402.

Under Rule 60(b)(1), a district court may grant relief from a judgment for "mistake, inadvertence, surprise, or excusable neglect" on a motion made within one year of the judgment. FED. R. CIV. P. 60(b)(1). Pertinent to a motion for relief from a default judgment, courts are to consider: (1) the extent of prejudice to the plaintiff; (2) the culpability of the defendant's conduct; and (3) the merits of the defendant's asserted defense. <u>Rogers v. Hartford Life & Accident Ins. Co.</u>, 167 F.3d 933, 938 (5th Cir. 1999). Additional factors may be considered by the court as well, and "the decision of whether to grant relief under Rule 60(b)(1) falls within [the district court's] sound discretion." <u>Id.</u> at 939.

The first factor weighs in favor of Littlewood, as a grant of relief from judgment would merely require Warfield to proceed to trial on his claims against Littlewood as in any other

7

lawsuit. Concerning the second factor, Littlewood argues that he was not culpable for the default because he did not receive notice of the motion for partial summary judgment. It is undisputed, however, that the Receiver served each of the critical summary judgment documents upon Littlewood, by regular mail, at the address provided by Littlewood's counsel in his Motion to Withdraw.[1] Moreover, the clerk served the Final Judgment on Littlewood at the same address utilized by the Receiver, and that notice was received by Littlewood. With this evidence in the record, Littlewood is presumed to have received the Receiver's pleadings. See Beck v. Somerset Techs., Inc., 882 F.2d 993, 996 (5th Cir. 1989) ("Proof that a letter properly directed was placed in a U.S. Post office mail receptacle creates a presumption that it reached its destination in the usual time and was actually received by the person to whom it was addressed."). Apart from his self-serving affidavit, Littlewood presented no evidence to rebut this presumption. Therefore, the second factor favors the Receiver.

Littlewood's attempt to raise a meritorious defense is also unavailing. That he was merely an investor in the RDI scheme and not a knowing participant in any fraudulent conduct are not relevant to his liability under UFTA. See Part B, infra. Further, nothing in Littlewood's affidavit supporting his Rule 60(b) motion

---

[1] These documents were: (1) the Receiver's Notice of Motion for Partial Summary Judgment; (2) the Receiver's Joint Submission Motion for Partial Summary Judgment; and (3) the Receiver's Notice of Default Regarding Receiver's Motion for Partial Summary Judgment.

negated that RDI operated as a fraudulent Ponzi scheme from which Littlewood received profits. Littlewood also argues that he invested more in the RDI program and received less than the amounts the Receiver calculated, but the Receiver's documentary evidence and testimony contradict his assertions. See Lawrence, 276 F.3d at 197.

Offering additional factors to persuade, Littlewood argues that he acted in good faith in the litigation by (1) continuing to participate in discovery after his initial counsel withdrew, (2) communicating with opposing counsel in an effort to resolve the case amicably, (3) retaining counsel in Texas shortly after he realized that the district court had entered judgment against him, and (4) instructing his new counsel to file a Rule 60(b) motion within three weeks of the entry of the final judgment. This argument, however, hurts his cause as much as it helps him. The record indicates that the Receiver's counsel offered settlement terms to Littlewood and explicitly warned him that if the settlement offer was not accepted, the Receiver would obtain a judgment for the full amount of Littlewood's liability. Hence, even if Littlewood failed to receive the Receiver's Motion for Partial Summary Judgment, Littlewood did nothing to monitor the status of the claims against him. His explanations do not justify his failure to attend to this lawsuit. Smith v. Alumax Extrusions, Inc., 868 F.2d 1469, 1471-72 (5th Cir. 1989) ("[T]he fact that a litigant is personally uninformed as to the state of the matters

9

before the court pertaining to his case is not sufficient to constitute the excusable neglect warranting relief from summary judgment contemplated by Rule 60(b).").

For these reasons, and because the district court's denial of Littlewood's Rule 60(b) motion did not preclude examination of the merits of the case, the court did not abuse its discretion.

## B.  Summary Judgment

Littlewood and Johnson argue that the district court erred by granting summary judgment by default.[2]  Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  The burden is on the moving party to show that "there is an absence of evidence to support the nonmoving party's case."  Freeman v. Tex. Dep't of Crim. Justice, 369 F.3d 854, 860 (5th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554 (1986)).  Once the moving party meets its initial burden, the nonmoving party "must set forth

_____

[2]    Appellants argue that the district court rendered a default judgment based solely on the pleadings.  The record demonstrates that the court granted summary judgment based on evidence, and not just on the pleadings, however.  Although the order granting the Receiver's motion for partial summary judgment stated that the court had reviewed the pleadings to determine whether the Appellants raised genuine issues of material fact, the Order also referenced the Receiver's motion, which was supported by excerpts from the Appellants' depositions and discovery responses, as well as the Receiver's sworn declaration.

10

specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). The nonmoving party, however, "cannot satisfy this burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." Freeman, 369 F.3d at 860 (citations omitted). We review the district court's granting of summary judgment de novo, applying the same standard as the district court. United States v. Lawrence, 276 F.3d 193, 195 (5th Cir. 2001).

Littlewood and Johnson argue, and the Receiver concedes, that Washington state's law concerning the UFTA, and not that of Texas, should be applied in this case. Appellants further rely on a Washington state fraudulent transfer case holding that a money judgment may only be awarded against a transferee if the transferee knowingly accepted the property with an intent to assist the debtor in evading the creditor and place the transferred assets beyond the creditor's reach. Park Hill Corp. v. Sharp, 803 P.2d 326, 328 (Wash. Ct. App. 1991). They overlook that in Eagle Pacific Ins. Co. v. Christensen Motor Yacht Corp., 934 P.2d 715 (Wash. Ct. App. 1997), the court rejected Park Hill and decided that the plain language of the UFTA permits entry of judgment even without proof that the transferee knowingly accepted property and intended to assist the debtor in evading the creditor. See id. at 720.

In light of these split authorities, and because the Supreme Court of Washington has not interpreted the provision of the UFTA at issue in the instant case, we must make an "Erie guess"

11

as to how Washington would interpret the provision at issue. Mayo v. Hartford Life Ins. Co., 354 F.3d 400, 406 (5th Cir. 2004). Eagle Pacific, we "guess," is more consistent with the plain reading of the text of the UFTA. Additionally, Eagle Pacific's interpretation is consistent with how Illinois's version of the UFTA, which mirrors Washington's version, has been interpreted. See Scholes v. Lehman, 56 F.3d 750, 757 (7th Cir. 1995) (interpreting Illinois's version of the UFTA). Further, this provision of the UFTA (including the Texas version of the UFTA relied on by the district court) is "virtually identical" to the corresponding provision of the Bankruptcy Code, 11 U.S.C. § 548,[3] and cases interpreting that statute are consistent with the interpretation arrived at in Eagle Pacific. See Ramirez Rodriquez v. Dunson (In re Ramirez Rodriquez), 209 B.R. 424 (Bankr. S.D. Tex. 1997); Cuthill v. Greenmark, LLC (In re World Vision Entm't. Inc.), 275 B.R. 641, 658 (Bankr. M.D. Fla. 2002); In re Carrozzella & Richardson, 286 B.R. 480, 485-86 (Bankr. D. Conn. 2002). Thus, the Park Hill interpretation of Washington's version of the UFTA is an outlier on which Appellants may not rely.

To recover the transfers from RDI to Littlewood and Johnson, the Receiver was required to demonstrate that Littlewood and Johnson received transfers from RDI that were made with actual

---

[3]   See Scholes, 56 F.3d at 756; In re Agric. Research & Tech. Group, Inc., 916 F.2d 528, 535-36 (9th Cir. 1990).

12

intent to defraud. WASH. REV. CODE § 19.40.041(a)(1).[4] The Receiver satisfied his burden with evidence of Appellants' receipts from RDI and evidence that RDI was a Ponzi scheme, which is, as a matter of law, insolvent from its inception. Cunningham v. Brown, 265 U.S. 1, 7-8, 44 S. Ct. 424, 428 (1924). The Receiver's proof that RDI operated as a Ponzi scheme established the fraudulent intent behind transfers made by RDI. See Scholes, 56 F.3d at 757. Littlewood and Johnson could then preclude recovery by the Receiver by proving that they had received the transfers in good faith and in exchange for reasonably equivalent value. See § 19.40.081.[5] Appellants contend that because they were not knowing participants in the Ponzi scheme, they cannot be held liable under the Washington version of the UFTA. As noted above, however, the transferees' knowing participation is irrelevant under the statute. See Eagle

---

[4] WASH. REV. CODE § 19.40.041(a)(1):
(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
(1) With actual intent to hinder, delay, or defraud any creditor of the debtor.

[5] WASH. REV. CODE § 19.40.081:
(a) A transfer or obligation is not voidable under RCW 19.40.041(a)(1) against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee.
(b) Except as otherwise provided in this section, to the extent a transfer is voidable in an action by a creditor under RCW 19.40.071(a)(1), the creditor may recover judgment for the value of the asset transferred, as adjusted under subsection (c) of this section, or the amount necessary to satisfy the creditor's claim, whichever is less. The judgment may be entered against:
(1) The first transferee of the asset or the person for whose benefit the transfer was made.

13

Pacific, 934 P.2d at 720; Scholes, 56 F.3d at 759-60.  The Appellants' individual defenses to summary judgment can be analyzed against this background.

Littlewood asserts that the Receiver's evidence was not based on personal knowledge, was both hearsay and incompetent, and therefore was inadmissible for summary judgment purposes under Federal Rule of Civil Procedure 56.  Littlewood's assertions are without merit.  First, the Receiver qualified as RDI's record custodian. See United States v. Jones, 554 F.2d 251, 252 (5th Cir. 1977).  Second, he spent thousands of hours investigating RDI's banking transactions and establishing that RDI was a Ponzi scheme.  The Receiver testified that he subpoenaed bank records from more than one hundred seventy-five financial institutions and reviewed over thirty-two thousand banking transactions to unravel the Ponzi scheme.  Third, the Receiver's sworn declaration firmly established that specific amounts of Ponzi scheme assets were transferred to Littlewood and consisted of other investors' money rather than legitimate earnings.  Finally, Littlewood fails to specify any statement or document attached to the Receiver's Declaration that was inadmissible.[6]

While the Receiver's proof satisfied his burden under the UFTA to recover the transfers, see WASH. REV. CODE § 19.40.041(a)(1),

---

[6]     Littlewood also challenges that he received net transfers from RDI of $118,655, the amount expressed in the judgment.  The Receiver's conservative and well-supported conclusion took into account Littlewood's only viable complaint.  No genuine fact issue exists over the amount of transfer.

14

Littlewood failed to supply any competent evidence that he received the transfers in exchange for reasonably equivalent value.  See § 19.40.081.[7]  The district court did not err in granting summary judgment for the Receiver.

Johnson first argues, conclusorily and without offering proof or challenging the Receiver's evidence, that RDI was not operated as a Ponzi scheme.  Conclusory allegations and unsubstantiated assertions, however, are not competent summary judgment evidence.  Freeman, 369 F.3d at 860 (citations omitted).  Moreover, contrary to his argument, Johnson sought a deduction on his 2002 federal tax return related to casualty and theft.  The deduction requires the taxpayer to aver that his loss was the result of "swindling, false pretenses, [or] any other form of guile."  See Edwards v. Bromberg, 232 F.2d 107, 109-110 (5th Cir. 1956). Johnson's tax return constitutes a significant, albeit not definitive, admission that RDI was operated in a fraudulent manner.[8]

Johnson also urges that, even if the Receiver satisfied his burden, recovery should be precluded because Johnson received the transfers from RDI in good faith and in exchange for reasonably equivalent value.  See WASH. REV. CODE § 19.40.081. There is a strong

---

[7]    We assume arguendo that Littlewood's affidavit, attached to his Rule 60(b) motion, created a sufficient issue on his good faith.

[8]    Johnson's disagreement with the Receiver over the net amount of RDI funds he received is, like Littlefield's, unavailing and conclusory against the Receiver's conservative estimate.

15

likelihood that Johnson cannot establish good faith under an objective standard. In re Agric. Research & Tech. Group, Inc., 916 F.2d at 535-36 (in context of the UFTA, court examines what transferee objectively knew or should have known in questions of good faith); In re Sherman, 67 F.3d 1348, 1355 (8th Cir. 1995) (in context of § 548 of the Bankruptcy Code, good faith is determined by looking at what the transferee "objectively knew or should have known instead of examining the transferee's actual knowledge from a subjective standpoint"). Johnson's failure to inquire about RDI more closely, in light of the abundant suspicious information he possessed about the people, the scheme, and the previous schemes, raises serious questions about his good faith defense.

We need not draw a conclusion on good faith, however, as his defense would still fail because he did not receive the transfers from RDI in exchange for reasonably equivalent value. Johnson relies on his broker services to RDI as reasonably equivalent value for the transfers he received. The primary consideration in analyzing the exchange of value for any transfer is the degree to which the transferor's net worth is preserved. See Butler Aviation Int'l v. Whyte, 6 F.3d 1119, 1127 (5th Cir. 1993). It takes cheek to contend that in exchange for the payments he received, the RDI Ponzi scheme benefitted from his efforts to extend the fraud by securing new investments. See In re Ramirez Rodriguez, 209 B.R. at 434 (stating that "as a matter of law, the Defendant gave no value to the debtors [Ponzi scheme operators] for

16

the commissions attributable to investments made by others pursuant to the verbal agreement with [the debtors]"); see also Randy v. Edison Worldwide Capital (In re Randy), 189 B.R. 425, 438-39 (Bankr. N.D. Ill. 1995) (as illegal services premised on illegal contracts, broker services provided in furtherance of a Ponzi scheme do not provide reasonably equivalent value); Dicello v. Jenkins (In re Int'l Loan Network, Inc.), 160 B.R. 1, 16 (Bankr. D.D.C. 1993)(investors who talked up Ponzi scheme, even if they had a contract, conferred no value since enforcing an illegal contract exacerbates harm to defrauded creditors). This argument is unacceptable.

The evidence in this case demonstrated that RDI did not receive reasonably equivalent value from Johnson, and Johnson failed to raise any genuine issue of material fact demonstrating otherwise. Accordingly, the district court did not err in granting summary judgment for the Receiver.

## V. CONCLUSION

For the reasons discussed above, we **AFFIRM** the judgments as to both Johnson and Littlewood; we **VACATE** the order declaring nondischargeability of the judgments in bankruptcy.

17