IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

**September 18, 2007**

Charles R. Fulbruge III
Clerk

No. 07-10093
Summary Calendar

MICHAEL J. QUILLING,
Receiver for Sardaukar Holdings, IBC,
and Bradley C. Stark,

                                        Plaintiff-Appellee,

v.

JEFFREY MARC SCHONSKY,

                                        Defendant-Appellant.

Appeal from the United States United States District Court
for the Northern District of Texas
No: 3:05-CV-2122

Before REAVLEY, SMITH, and BARKSDALE, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

Jeffrey[1] Schonsky appeals a summary judgment and the denial of his Federal Rule of Civil Procedure 60(b) motion to vacate. Finding no error, we affirm.

I.

This case arises out of payments made by Bradley Stark, the treasurer for Sardaukar Holdings, IBC ("Sardaukar"), a Ponzi scheme, from Sardaukar's JP Morgan bank account to Schonsky. Stark transferred (1) $6,195.63 to Ben Bridge Jeweler #48 on December 17, 2004, for the purchase of a Rolex watch; (2) $175,000.00 directly to Schonsky on February, 24, 2005; and (3) $6,719.42 to Alienware on May 5, 2005, for a laptop computer. Michael Quilling has been appointed receiver for Sardaukar and attempts to recover the value of those transfers.

On July 1, 2005, the Securities and Exchange Commission ("SEC") sued various defendants, including Sardaukar and Stark, for the sale of unregistered securities. See SEC v. Megafund Corp., No. 3-05-CV-1328-L (N.D. Tex. filed July 1, 2005). The SEC alleged that Stark and Sardaukar had raised over $13 million from unwitting investors through a high yield investment program scheme whereby the "trader" promised to pool investors' funds, generate high returns by engaging in arbitrage, send participants a risk-free 10% return per month, and donate a portion of trading profits to charitable causes. In Megafund, the court appointed Quilling as receiver for all defendants, with power to

> take[] exclusive jurisdiction and possession of the assets, monies, securities, claims in action, and properties, real and personal, tangible and intangible, of whatever kind and description, wherever situated, of [the defendants] and any entities they control ("Receivership Assets"), and the books and records of [the defendants] ("Receivership Records").

---

[1] In his pro se brief, the appellant spells his first name "Jeffery," but the official docket sheet shows the name as "Jeffrey."

Quilling was

> authorized to institute, defend, compromise or adjust such actions or proceedings in state or federal courts now pending and hereafter instituted, as may in his discretion be advisable or proper for the protection of the Receivership Assets or proceeds therefrom, and to institute, prosecute, compromise or adjust such actions or proceedings in state or federal court as may in his judgment be necessary or proper for the collection, preservation and maintenance of the Receivership Assets.

> The Receiver is hereby authorized to institute such actions or proceedings to impose a constructive trust, obtain possession and/or recover judgment with respect to persons or entities who received assets or funds traceable to investor monies.

Using his authority as receiver, Quilling sued for $187,915.05, the sum attributable to the amounts given Schonsky by Stark. All transfers were made from Sardaukar's JP Morgan Chase bank account, in which investor money had been pooled. Schonsky does not dispute receiving the funds, the watch, or the computer, nor does he claim to be an investor.

After Quilling had moved for summary judgment on September 6, 2006, the district court (per a magistrate judge assigned by consent) issued a scheduling order giving Schonsky until September 26 to respond. On September 25 the court received a letter from Schonsky in which he admitted to "receiv[ing] monies from Mr. Stark, who was a friend." Attached to the letter was a copy of the scheduling order. Treating the letter as his response to the motion, the court entered summary judgment in favor of Quilling on December 19, 2006. Schonsky filed a rule 60(b) motion to vacate the summary judgment, which the court denied.

II.

A.

We review a summary judgment de novo, applying the same standard as does a district court. United States v. Lawrence, 276 F.3d 193, 195 (5th Cir. 2001). Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party has the burden to show that "there is an absence of evidence to support the nonmoving party's case." Freeman v. Tex. Dep't of Crim. Justice, 369 F.3d 854, 860 (5th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). The nonmoving party then "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Mere "metaphysical doubt" as to material facts is not enough. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

Quilling pursued his claims under the Uniform Fraudulent Transfer Act ("UFTA"), which provides,

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose within a reasonable time before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> (1) with actual intent to hinder, delay or defraud any creditor of the debtor ....

TEX. BUS. & COMM. CODE § 24.005.

Schonsky has not challenged the existence of a Ponzi scheme in the district court or this court. The issue, then, is whether Quilling presented sufficient evidence that a Ponzi scheme existed. He did.

A Ponzi scheme is "[a] fraudulent investment scheme in which money con-

4

tributed by later investors generates artificially high dividends for the original investors." BLACK'S LAW DICTIONARY 1180 (8th ed. 2004). A record custodian's analysis of bank records and sworn testimony to Ponzi scheme asset distribution is enough to shift the burden of proof to the non-movant. See Warfield v. Byron, 436 F.3d. 551, 559 (5th Cir. 2006). Quilling's affidavit, attached to the summary judgment motion, firmly establishes that Sardaukar's bank account at JP Morgan Chase was in receipt of investor funds and was the source of Stark's gifts to Schonsky. That is enough to shift the burden to Schonsky. Because he does not challenge the Ponzi scheme, there is no dispute as to its existence.

Under the UFTA, transfers made from a Ponzi scheme are presumptively made with intent to defraud, because a Ponzi scheme is, as a matter of law, insolvent from inception. Warfield, 436 F.3d at 558. When construing an identically worded Washington statute,[2] this court held that a transferee's knowledge was irrelevant to the determination of whether the transfer was made with intent to delay or defraud a debtor. Id. For this reason, Schonsky's claim that he did not know the gifts came from a Ponzi scheme fails. Because Quilling met his summary judgment burden and Schonsky did not, summary judgment is appropriate.

B.

Schonsky argues that the district court abused its discretion by not granting him rule 60(b) relief. Particularly, he contends that his due process rights were violated because he did not receive notice of the summary judgment motion

---

[2] There are no Texas Supreme Court cases addressing the requisite mental state necessary under the UFTA, so we must make an "Erie guess" as to the correct construction of the statute. Mayo v. Hartford Life Ins. Co., 354 F.3d 400, 406 (5th Cir. 2004). In Warfield, 436 F.3d at 558, we made an Erie guess as to the appropriate construction of Washington's identically worded UFTA. We agree with the Warfield panel that the statute's plain meaning is the best guide to the Texas Supreme Court's likely view: We conclude that the transferee's knowledge is irrelevant to deciding whether transfers were made with an intent to defraud.

filed by Quilling and, in the alternative, that he was ineffectively represented by counsel with respect to possible settlement.

We review denial of a rule 60(b) motion for abuse of discretion. Seven Elves, Inc. v. Eskenazi, 635 F.2d 396, 402 (5th Cir. Unit A Jan. 1981). "To overturn the district court's denial . . . it is not enough that a grant of the motion might have been permissible or warranted; rather, the decision to deny the motion must have been sufficiently unwarranted as to amount to an abuse of discretion." Fackelman v. Bell, 564 F.2d 734, 736 (5th Cir. 1977).

Rule 60(b) provides that

> [o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Fed. R. Civ. P. 60 (b). Schonsky did not indicate upon which clause he based his motion. The district court correctly determined that only clauses 1 and 6 are applicable.

Concerning clause 1, the court evaluated whether there was "mistake, inadvertence, surprise, or excusable neglect," FED. R. CIV. P. 60(b), in light of Schonsky's allegation that he had no notice of the pending motion and that his counsel had withdrawn in July. Neither of these bases was enough. Although we have held that failure to receive notice is a basis for a rule 60(b) motion under the "excusable neglect" exception, McKenzie v. Principi, 83 Fed. App'x 642 (5th Cir. 2003), that is not the situation here.

The district court noted that Schonsky's letter was responsive to the summary judgment motion and had a copy of the court's scheduling order attached. Although Schonsky alleges that he received no documents from Quilling after the withdrawal of his counsel on July 21, 2006, the record indicates that Quilling served his summary judgment motion on Schonsky at his home address, the address on file with the court and the address to which the scheduling order went. "Proof that a letter properly directed was placed in a U.S. post office mail receptacle creates a presumption that it reached its destination in the usual time and was actually received by the person to whom it was addressed." Beck v. Semerset Techs., Inc., 882 F.2d 993, 996 (5th Cir. 1989).

There is nothing in the record, therefore, to indicate that Schonsky lacked notice of the summary judgment motion or hearing or that his counsel's withdrawal affected his receipt of the pleadings at issue; the evidence is to the contrary. The district court therefore did not abuse its discretion in denying the rule 60(b) motion with respect to clause 1.

Schonsky also asserts that he was entitled to have the summary judgment vacated because he used the money to care for his ailing father. This contention arguably falls under the catch-all clause, which allows relief from judgment for "any other reason justifying relief from the operation of the judgment." FED. R. CIV. P. 60(b)(6). The situation must be "extraordinary" to fall within that exception. United States ex rel. Garibalidi v. Orleans Parish Sch. Bd., 397 F.3d 334, 337 (5th Cir. 2005). Though the main thrust of rule 60(b) is "to balance the principle of finality of a judgment with the interest of the court in seeing that justice is done in light of all the facts," a claimant cannot rely solely on the court's sense of justice. Castleberry v. CitiFinancial Mortgage Co., 230 Fed. App'x 352, 356 (5th Cir. 2007) (per curiam) (quoting Hesling v. CSX Transp., Inc., 396 F.3d 632, 638 (5th Cir. 2005)). Schonsky's appeal to the care of his father is not enough for rule 60(b)(6) relief.

The summary judgment is AFFIRMED.