[Cite as *Uren v. Dahoud*, 2021-Ohio-3425.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| JAMES T. UREN, | : | APPEAL NO. C-170438<br>TRIAL NO. A-1406892 |
| and | : | |
| JOSEPHINE KHOO-SMITH, | : | *O P I N I O N.* |
| Plaintiffs-Appellees, | : | |
| | : | |
| vs. | : | |
| | : | |
| WILLIAM SCOVILLE, Individually and<br>on behalf of his IRA, et al., | : | |
| Defendants, | : | |
| and | : | |
| DAVID DAHOUD, | : | |
| Defendant-Appellant. | : | |


Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: September 29, 2021


*Santen & Hughes*, *Brian P. O'Connor* and *Charles E. Reynolds,* for Plaintiffs-Appellees,

*James R. Hartke*, for Defendant-Appellant.

**WINKLER, Judge.**

{¶1}  This appeal is brought by defendant-appellant David Dahoud following the entry of summary judgment by the Hamilton County Court of Common Pleas in favor of plaintiffs-appellees James T. Uren and others, collectively "the class," in the amount of $195,473 representing Dahoud's "net winnings" in an alleged "Ponzi scheme."  The trial court determined on cross-motions for summary judgment that the class was entitled to "claw back" Dahoud's alleged gain arising out of the scheme.  Because the class established entitlement to summary judgment and Dahoud did not, we affirm.

## Background Facts and Procedure

{¶2}  This class-action lawsuit was filed in November 2014.  According to the amended complaint, nondefendants Glen Galemmo and his affiliated entities, which we refer to collectively as "Galemmo," perpetuated a criminal fraud by operating a Ponzi scheme.  Some persons and entities who invested money in that scheme from January 1, 2002, to July 26, 2013, suffered a "net loss," meaning "the funds invested exceeded the total of all funds received in the form of purported income or return of principal."

{¶3}  The class of "net losers" sought to claw back money from several named defendants, including Dahoud, on the theory that certain transfers they received from Galemmo, a "debtor" under Ohio's Uniform Fraudulent Transfer Act, R.C. Chapter 1336, were in violation of R.C. 1336.04(A)(1) and (2), resulting in "unjust enrichment."

{¶4}  Among other things, the class alleged that Dahoud received transfers of "cash or cash equivalents" from Galemmo during a time period when Galemmo

was "insolvent" that exceeded the sum of funds Dahoud had deposited with Galemmo, without Galemmo receiving "any reasonably equivalent value" in exchange. Further, the class alleged the transfers to Dahoud were made "with the actual intent to hinder, delay, or defraud the Class as creditors of Galemmo" and that Dahoud had a "business relationship" with Galemmo "at the time" of the subject transfers. Finally, the class alleged that Galemmo had paid Dahoud "approximately 2 to 3 percent of $10,000,000 of investor's funds" for referring others to invest in Galemmo's scheme.

{¶5} In his answer, Dahoud denied all substantive allegations. The class moved for summary judgment against Dahoud in October 2016. In support, the class relied upon the affidavit of Brian P. O'Connor, one of their attorneys, and certain exhibits attached to that affidavit. The class contended these exhibits, coupled with the stipulation concerning the business records of the banks, contained the detailed facts establishing the class claims under the caselaw related to Ponzi schemes and fraudulent transfers. *See Bash v. Textron Fin. Corp.*, 524 B.R. 745, 757 (N.D.Ohio 2015); *Warfield v. Byron*, 436 F.3d 551, 558-560 (5th Cir.2006).

{¶6} Counsel for the class explained the import of the business record stipulation with respect to establishing the claims in the context of a Ponzi scheme: "If you deposit this money, you get credit for this. You withdrew this money, you get debited for this amount."

{¶7} Dahoud also moved for summary judgment. In support, Dahoud filed his own affidavit with attached exhibits, and the affidavit of expert Joseph B. Mansour with attached exhibits. Dahoud primarily relied upon a legal argument, abandoned on appeal, that he could not be subject to the claw-back claims because he believed he was, by contract, only a "limited partner" in a specific Galemmo fund,

3

the Queen City Investment Fund II, LLC, ("Fund II"). Dahoud additionally took the conclusory position that he had invested more with Galemmo than he had withdrawn over the years.

{¶8} Both parties opposed the other party's motion for summary judgment, and also moved to strike the affidavits submitted by the opposition in support of summary judgment. Dahoud then filed a reply in support of summary judgment and a supplemental affidavit with additional exhibits.

{¶9} On November 21, 2016, the trial court held a hearing on the motions. In an entry dated November 28, 2016, the trial court granted the class's motion for summary judgment against Dahoud, entered a judgment against Dahoud for $195,473 plus interests and costs, and denied Dahoud's cross-motion for summary judgment. The court also ruled on the pending motions to strike affidavits. In doing so, the court denied Dahoud's motion to strike O'Connor's affidavit and granted the class's motion to strike Dahoud's and Mansour's affidavits, but noted that the later evidence was ineffective for summary-judgment purposes even if considered.

{¶10} Eventually, the claims against the other defendants in the case were resolved by way of settlement, dispositive motion, or trial. The trial court then entered a final judgment disposing of all claims. That July 11, 2017 judgment incorporated by reference the prior orders appealed in this case. Dahoud filed a timely appeal that this court consolidated with appeals filed by several other defendants. The consolidated appeals were delayed by a bankruptcy stay. That stay has been lifted and the appeals by the other defendants have been dismissed. Accordingly, we proceed only on Dahoud's appeal.

4

Assignments of Error and Standards of Review

{¶11} Generally, Dahoud's three assignments of error challenge the court's resolution of the cross-motions for summary judgment and the evidentiary rulings leading to that determination.

{¶12} Summary judgment is governed by the provisions of Civ.R. 56. Under Civ.R. 56(C), summary judgment is proper when the moving party establishes that "(1) no genuine issue of any material fact remains, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and construing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." *State ex rel. Duncan v. Mentor City Council*, 105 Ohio St.3d 372, 2005-Ohio-2163, 826 N.E.2d 832, ¶ 9, citing *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977).

{¶13} When ruling on a motion for summary judgment, the court is permitted to consider only "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action." Civ.R. 56(C).

{¶14} Of particular importance to this case is Civ.R. 56(E), which provides that "[s]upporting and opposing affidavits shall be made upon personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to matters stated in the affidavit." Civ.R. 56(E). Further, "[s]worn or certified copies of all papers or parts of papers referred to in an affidavit shall be attached to or served with the affidavit." *Id.*

{¶15} Thus, Civ.R. 56(E) governs the proper procedure for introducing evidentiary matter that does not fit into any of the categories referenced in Civ.R.

56(C)—the evidentiary matter must be incorporated by reference in a " 'properly framed affidavit.' " *Douglass v. Salem Community Hosp.*, 153 Ohio App.3d 350, 2003-Ohio-4006, 794 N.E.2d 107, ¶ 25 (7th Dist.), quoting *Biskupich v. Westbay Manor Nursing Home*, 33 Ohio App.3d 220, 222, 515 N.E.2d 632 (8th Dist.1986), citing *State ex rel. Corrigan v. Seminatore*, 66 Ohio St.2d 459, 467, 423 N.E.2d 105 (1981).

{¶16} Generally, we review a trial court's evidentiary decisions for an abuse of discretion. *Douglass* at ¶ 20. But we apply a de novo standard of review to issues of law, including whether summary judgment was proper. *See Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8.

### Class Carried Summary-Judgment Burden

{¶17} Dahoud's first and second assignments of error are related. In part, he contends the trial court erred when granting summary judgment for the class because O'Connor's affidavit was not sufficient to authenticate the attached exhibits.

{¶18} Dahoud maintains that O'Connor lacked the personal knowledge to authenticate the attached documents. The authenticity challenge is directed to whether the affiant, here O'Connor, sufficiently demonstrated the attachments were true and accurate copies of what O'Connor purported them to be; O'Connor was not swearing to the truth of the underlying facts.

{¶19} In the introductory paragraph, O'Connor swore that he was counsel for the class, he was over the age of 18, under no disability, and that he "ma[d]e this affidavit upon personal knowledge."

{¶20} He then purported to authenticate "as a true and correct copy" three exhibits: (1) a copy of "the Plea Agreement entered into by Galemmo in United States v. Galemmo, United States District Court, Southern District of Ohio[,] Case No. : 13-

6

141"; (2) several pages from a deposition purportedly taken of Galemmo, and (3) bank records such as cancelled checks evincing the transactions between Galemmo and Dahoud, as well as a summary of those transactions.

{¶21} Dahoud suggests that nothing short of a certified copy of the plea agreement satisfies the authentication requirement. But, the "[v]erification required by Civ.R. 56(E) of documents attached to an affidavit supporting or opposing a motion for summary judgment is satisfied by an appropriate averment in the affidavit itself." *Seminatore*, 66 Ohio St.2d 459, 423 N.E.2d 105, at paragraph three of the syllabus; *Olverson v. Butler*, 45 Ohio App.2d 9, 12, 340 N.E.2d 436 (1oth Dist.1975).

{¶22} Although O'Connor could have used more precise words when authenticating the plea agreement, his statement conveys his knowledge that the attached plea agreement is a true and accurate copy filed in the federal criminal action not because someone told him, but because he obtained it from the docket for the criminal case. Considering that O'Connor is an attorney and the exhibit contains an electronic file stamp across the top of each page showing it was filed on "12/17/13 in case:1:13-cr-00141-HJW," the trial court's acceptance of O'Connor's averment is reasonably based and not an abuse of discretion.

{¶23} Dahoud argues the trial court took "judicial notice" of the plea agreement, even though a court may not take judicial notice of another court's docket. *See, e.g., Natl. Distillers & Chem. Corp. v. Limbach*, 71 Ohio St.3d 214, 643 N.E.2d 101 (1994). The trial court did note in its entry that it was taking "judicial notice" of the "Court records attached to" O'Connor's affidavit. But it is unclear whether the court was merely taking judicial notice that plea agreements are docketed in criminal cases, which is permissible under Evid.R. 201(B), or that the

court was taking judicial notice of the document, which is not permitted. Regardless, O'Connor's affidavit was sufficient to meet the authentication requirement with respect to the plea agreement, even if the trial court also erroneously took "judicial notice" of the document.

{¶24} We arrive at a different conclusion with respect to the excerpted portions of the Galemmo deposition. O'Connor failed to assert facts explaining where he obtained the deposition excerpts, and the attached pages do not indicate that the deposition was taken in this case. The class, however, presents an additional theory for consideration of those deposition pages.

{¶25} The class contends that O'Connor's failure to authenticate the pages as "true and accurate" was remedied when the class filed the complete Galemmo deposition with the trial court. *See* Civ.R. 32. Because the deposition was separately filed, the class argues the trial court properly considered it as evidence in support of the class's motion for summary judgment.

{¶26} A deposition filed in the action is one type of evidentiary material identified in Civ.R. 56(C) that a court may properly consider when granting summary judgment. Our record reflects that the Galemmo deposition was filed after the interlocutory grant of summary judgment to the class, but long before final judgment was entered in the action. Dahoud never challenged that filing in the trial court or in this appeal, even though he was notified of the filing, and he has never asserted that the pages attached to O'Connor's affidavit were inaccurate. Considering these circumstances, we hold that the trial court's failure to strike the part of O'Connor's affidavit relating to the Galemmo deposition pages for lack of authentication was harmless error remedied when the class separately filed the deposition before the entry of final judgment. *See* Civ.R. 61.

{¶27}  Next we address the bank records.  O'Connor attached to his affidavit a "summary spreadsheet of transfers of funds between David Dahoud and Galemmo and the Galemmo Entities" as well as the "supporting bank records for each entry contained on the spreadsheet."  He further averred that "the bank records are true and correct copies of business records obtained from financial institutions in response to a subpoena."  This language is important because a few days before the summary-judgment hearing, the parties, including Dahoud, filed a joint stipulation regarding the bank records.  That stipulation provided that "the bank records provided by U.S. Bank, KeyBank, and Bank of America * * * are authentic records of regularly conducted business activities."

{¶28}  The import of O'Connor's affidavit was to verify that the attached financial records were those subpoenaed from the financial institutions.  As O'Connor explained that he is an attorney in the case, we cannot say the trial court abused its discretion by accepting O'Connor's verification of the attached records from the financial institutions.

{¶29}  Based on this analysis, we conclude that the trial court did not err by considering the exhibits attached to O'Connor's affidavit as "true and correct" copies that could be considered for summary-judgment purposes.  Thus, Dahoud has failed to demonstrate that the trial court erred by granting summary judgment for the class because this evidence was not authenticated.

## Dahoud's Supplemental Affidavit and Attached Exhibits were Insufficient

{¶30}  Dahoud additionally argues that the court erred by entering summary judgment against him. To that end, Dahoud contends that his supplemental affidavit tendered with his reply memorandum introduced evidence of other transactions that

should have been taken into account when calculating his losses. This evidence, he asserts, demonstrates that he would be a net loser, not a net winner, even if the class could prove the class allegations that Galemmo transferred funds to him during a Ponzi scheme.

{¶31} Dahoud attached to his supplemental affidavit several groups of documents. The first relate to schedule K-1 forms issued by Galemmo that showed losses not reflected in the class's net-loser analysis. Dahoud however, acknowledged that the K-1 forms issued by Galemmo were fraudulent. Thus, this evidence did not demonstrate an absence of a genuine issue of material fact.

{¶32} The next group of documents relate to Dahoud's argument that $165,000 transferred to him from Galemmo represented "employment commissions received from Galemmo" for his work related to "Fund II" and should not have counted as "winnings" in the net-loser analysis. In this case, that argument mainly implicates the part of the fraudulent-transfer statute addressing constructively-fraudulent transfers. Specifically, it implicates the provision concerning whether the "debtor"—here Galemmo—received "a reasonably equivalent value in exchange for the transfer." R.C. 1336.04(A)(2).

{¶33} Dahoud provides no legal authority for his contention that he should be credited for his "commissions" related to Galemmo's fraudulent scheme. The caselaw we found is contrary to his position. *See Warfield*, 436 F.3d at 559-560. Thus, we conclude that this evidence did not demonstrate the absence of a genuine issue of material fact.

{¶34} Finally, Dahoud presented a check issued to him from Galemmo in the amount of $49,500. He contends that the bank records collected by the class

10

omitted this deposit to his investment account and, therefore, the class did not consider this contribution when applying the net-loser analysis.

{¶35} Dahoud averred that "he received check no[.] 1206 from Fund II and signed the back of this check back to Fund II to add as an additional investment-deposit to my account." Dahoud also attached to his supplemental affidavit a document containing a copy of the front of the check and a handwritten note indicating that "[t]his check was not cashed by David Dahoud but was given back to Queen City to reinvest."

{¶36} The class argues the notation on the exhibit indicates that the check was written but never cashed and, therefore, the check never actually caused any funds to move between accounts. This is why, the class explains, the check did not show up in Galemmo's bank records. The class concludes that because money never changed hands as a result of the check, evidence of the check does not affect the analysis of whether and to what extent Dahoud profited from the Ponzi scheme. Secondarily, the class argues that if the check had been deposited by Dahoud and caused a financial transaction to occur, those funds would have been an additional profit for Dahoud for which he would have been liable to the net losers in the Ponzi scheme. Dahoud does not refute these class arguments, which are supported by the record and the caselaw.

{¶37} Based on our review, we conclude that none of the evidence Dahoud submitted with his supplemental affidavit demonstrates the existence of a genuine issue of material fact as to the class claims. Further, we conclude that reasonable minds can come to but one conclusion and that conclusion is adverse to Dahoud, even when the evidence and stipulation is construed most strongly in his favor. Thus, we affirm the trial court's entry of summary judgment for the class on the cross-

motions for summary judgment. Accordingly, we overrule the first and second assignments of error.

### No Error with Respect to Initial Dahoud and Mansour Affidavits

{¶38} In his third and final assignment of error, Dahoud contends the trial court erred in striking his initial affidavit in support of summary judgment and that of his expert, Mansour. With respect to this evidence, the trial court explained that even if it considered the evidence, that evidence would not affect the court's analysis. In other words, the evidence did not weigh on the existence or absence of a material fact.

{¶39} A harmless evidentiary ruling is not a ground for reversal. *See* Civ.R. 61. Dahoud has not demonstrated any prejudice—how the evidence, if considered, affected the trial court's resolution of the cross-motions for summary judgment. Accordingly, we overrule this assignment of error.

### Conclusion

{¶40} In summary, we affirm the trial court's grant of summary judgment for the class on the cross-motions for summary judgment.

Judgment affirmed.

**MYERS, P.J.**, and **CROUSE, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.