M.L., as next friend of A.L., Plaintiff,

v.

## EL PASO INDEPENDENT SCHOOL DISTRICT, Defendant.

Civil Action No. 3:08–CV–76–KC.

United States District Court,
W.D. Texas,
El Paso Division.

April 16, 2009.

Charles Mark Berry, Attorney at Law, Colbert N. Coldwell, Guevara, Rebe, Bumann, Coldwell & Reedman, El Paso, TX, for Plaintiff.

Elena M. Gallegos, Walsh, Anderson, Brown, Schulze & Aldridge, PC, Austin, TX, Joe Ruben Tanguma, Walsh, Anderson, Brown, Schulze & Aldridge, PC, Irving, TX, for Defendant.

## ORDER

KATHLEEN CARDONE, District Judge.

On this day, the Court considered "Plaintiff's Motion for Summary Judgment" ("Plaintiff's Motion") (Doc. No. 20); Defendant "El Paso Independent School

District's Response to Plaintiff's Motion for Summary Judgment" ("Defendant's Response") (Doc. No. 23); and Plaintiff's "Reply to El Paso ISD's Response to Plaintiff's Motion for Summary Judgment" ("Plaintiff's Reply") (Doc. No. 28). For the reasons set forth herein, Plaintiff's Motion is **DENIED.**

On this day, the Court also considered Defendant "El Paso Independent School District's Motion for Summary Judgment" ("Defendant's Motion") (Doc. No. 19); "Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment" ("Plaintiff's Response") (Doc. No. 27);[1] and "Defendant El Paso Independent School District's Reply to Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment" ("Defendant's Reply") (Doc. No. 32). For the reasons set forth herein, Defendant's Motion is **GRANTED.**

## I. BACKGROUND

### A. Introduction

■ Plaintiff brings her case pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400, *et seq.* ("IDEA"). The purposes of the IDEA include "ensur[ing] that all children with disabilities have available to them a free appropriate public education ["FAPE"] that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A) (2006); *see also El Paso Indep. Sch. Dist. v. Richard R.,* 567 F.Supp.2d 918, 925 (W.D.Tex.

2008). To achieve this aim, the IDEA compels those states receiving federal funding to educate children with disabilities "to the maximum extent appropriate ... with children who are not disabled," 20 U.S.C. § 1412(a)(5), and to do so "in the least restrictive environment consistent with their needs." *Teague Indep. Sch. Dist. v. Todd L.,* 999 F.2d 127, 128 (5th Cir.1993) (citing *Sherri A.D. v. Kirby,* 975 F.2d 193, 207 n. 23 (5th Cir.1992) (explaining that least restrictive environment connotes "not only freedom from restraint, but the freedom of the child to associate with his or her family and able-bodied peers")). Although the FAPE that the IDEA demands of the states "need not be the best possible one, nor one that will maximize the child's educational potential," it must "be an education that is specifically designed to meet the child's unique needs, supported by services that will permit him 'to benefit' from the instruction." *Cypress–Fairbanks Indep. Sch. Dist. v. Michael F.,* 118 F.3d 245, 247 (5th Cir.1997) (quoting *Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley,* 458 U.S. 176, 188–89, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982)).

Because the State of Texas receives federal education funding, all school districts within its borders must comply with the IDEA. *See id.* To meet the IDEA's strictures, the various school districts must provide each disabled student on their rolls with a FAPE. *Id.* The FAPE provided must be tailored to each disabled child's needs through an "individualized educational program" ("IEP"), which is a written statement prepared at a meeting

---

**1.** Pursuant to this Court's March 23, 2009, Order, Plaintiff has resubmitted her Motion for Summary Judgment, her Response to Defendant's Motion, and her Reply to Defendant's Response, in order to comply with the format requirements in the Court's Standing Order Regarding Civil Motion Content. *See* Doc. Nos. 33–35; *see also* Order, March 23,

2009 (Doc. No. 30); Standing Order Regarding Civil Motion Content, Oct. 16, 2006, *available at* http://www.txwd.uscourts.gov/rules/stdord/ElPaso/Cardone_CivilMotion.pdf. As there have been no substantive changes in the reformatted documents, the Court will refer to the page and paragraph numbers of the original documents.

attended by a "qualified" and "knowledgeable" school district representative, a teacher, the child's parents or guardians, and, when appropriate, the child. *See* 20 U.S.C. § 1414(d)(1)(B). In Texas, the committee responsible for preparing an IEP is known as an Admissions, Review, and Dismissal Committee ("ARD Committee"). 19 TEX. ADMIN. CODE § 89.1050; *see Michael F.*, 118 F.3d at 247.

The IDEA provides a "comprehensive system of procedural safeguards" designed to promote compliance with its mandates. *See Honig v. Doe*, 484 U.S. 305, 308, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988); *Rowley*, 458 U.S. at 205, 102 S.Ct. 3034 (explaining the elaborate and highly specific procedural safeguards embodied in the IDEA); 20 U.S.C. § 1415 (outlining series of detailed procedural safeguards). Among these safeguards, the parents of the disabled child must be provided with "[a]n opportunity to present a complaint ... with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a [FAPE] to such child." 20 U.S.C. § 1415(b)(6). The IDEA also provides as follows:

> Whenever a complaint has been received under subsection (b)(6) ... of this section, the parents or the local educational agency involved in such complaint shall have an opportunity for an impartial due process hearing, which shall be conducted by the State educational agency or by the local educational agency, as determined by State law or by the State educational agency.

*Id.* § 1415(f)(1)(A).

When a state allows for these hearings to be conducted by a local educational agency, the IDEA permits "any party aggrieved by the findings and decision rendered in such a hearing" to appeal to the state's educational agency, which must then conduct an "impartial review of such decision" and "make an independent decision upon completion of such review." *Id.* § 1415(g).

After exhausting state administrative remedies, an aggrieved party under the IDEA accrues "the right to bring a civil action ... in a district court of the United States, without regard to the amount in controversy." *Id.* § 1415(i)(2)(A). Moreover, a party claiming entitlement to attorney fees under the IDEA may also file a claim in district court. *Id.* § 1415(i)(3).

Plaintiff brings her appeal from a December 7, 2007, Decision by the Special Education Hearing Officer ("Hearing Officer") which granted EPISD's Motion to Dismiss ("2007 Decision"). *See* Pl.'s Compl. ¶ 7. Defendant brings its appeal from a March 19, 2008, Decision by the Hearing Officer, which denied EPISD's counterclaim requesting an override of Plaintiff's refusal to consent to a reevaluation of her son's IEP ("2008 Decision"). *See* Def.'s Countercl. ¶¶ 39–46.

**B. Facts**

The following facts are gathered from the parties' pleadings; "Plaintiff's Appendix to Plaintiff's Motion for Summary Judgment: Statement of Facts" ("Plaintiff's Facts") (Doc. No. 20–4); "Defendant, El Paso ISD's Response to Proposed Undisputed Facts" ("Defendant's Facts") (Doc. No. 23–2); Defendant's "Proposed Undisputed Facts in Support of its Motion for Summary Judgment" ("Defendant's Facts II") (Doc. No. 19–6);[2] the exhibits

---

**2.** Plaintiff has failed to respond to Defendant's Facts II in the manner required by this Court's Standing Order Governing Motions for Summary Judgment. *See* Standing Order Governing Mots. for Summ. J., Sep. 12, 2005,

*available at* http://www.txwd.uscourts.gov/rules/stdord/ElPaso/stOrder_MSJ.pdf ("The papers opposing a motion for summary judgment shall include a document called 'Response to Proposed Undisputed Facts,' which

attached to the parties' submissions; and the Administrative Record ("Record").

A.L. is a minor and a student within the El Paso Independent School District ("Defendant" or "EPISD"). Pl.'s Compl. ¶ 1. At the beginning of October 2007, A.L. was a twelve-year-old student at Henderson Middle School. *Id.* ¶ 3. Prior to that time, A.L. had been identified with speech impairment, and had been receiving special-education services from EPISD since the third grade. Def.'s Countercl. and Third–Party Compl. ¶ 7.

On September 12, 2005, A.L. underwent a Speech/Language Evaluation to determine whether he met the eligibility criteria to qualify as a student with a language impairment. R. at 517. On October 3, 2005, an ARD Committee convened as part of an annual review to determine whether A.L. was still speech impaired and whether he needed special-education services. Pl.'s Facts ¶ 2. The Committee subsequently produced a report, in which the Committee determined that A.L. was speech impaired and needed, among other services, 60 minutes per week of speech-language pathology services, a "related service" pursuant to 20 U.S.C. § 1401(26)(A).[3] R. at 517–520.

On October 5, 2006, the ADR Committee convened again to conduct its annual review of A.L.'s IEP. Facts ¶ 3. The Committee once again produced a report in which A.L. was found to meet eligibility criteria for speech impairment. Facts ¶ 3; R. at 547–49.[4] The Committee further determined that A.L. continued to be entitled to 60 minutes per week of speech-language services.[5]

Shortly after the October 5, 2006, meeting, Plaintiff received a letter from Dr. Lorenzo Garcia, Superintendent for EPISD. Facts ¶ 4; R. at 309. In the letter, Dr. Garcia stated that EPISD was experiencing a shortage of speech language pathologists that year, but that "compensatory services for sessions missed resulting from the prolonged absence or unavailability of service providers will be offered to students affected by this circumstance." R. at 309. The letter also stated that EPISD would convene an ARD Committee "to determine compensatory services due to your child" as well as to "identify the frequency and duration of these services as stipulated in your child's current IEP and will provide these services in an appropriate manner once providers are obtained." *Id.* The committee could consider

---

states in separately numbered paragraphs corresponding to the paragraphs contained in the moving party's Proposed Undisputed Facts whether each fact asserted by the moving party is admitted or denied."). Instead, Plaintiff has submitted a "Restatement of Facts" which fails to specifically admit or deny Defendant's facts but instead provides an alternative narrative of the related events which is only loosely related to Defendant's Facts II. Accordingly, for the purposes of this Order, Defendant's Facts II, inasmuch as they are supported by the Administrative Record and Defendant's properly submitted evidence, are deemed admitted.

3. This ARD Committee report included the results of a report that was issued on September 26, 2005. R. at 517. This latter report was based on the A.L.'s September 12, 2005

Speech/Language Evaluation; it found A.L. qualified as a student with a speech impairment. *Id.*

4. The Administrative Record does not contain a full and complete copy of the Oct 5, 2006, ARD Committee report. However, the results of this meeting are undisputed by the parties.

5. The 2006 ARD Committee meeting references a Speech/Language Evaluation that the record states was performed on A.L. on September 26, 2005, and included in a report issued on the same day. R. at 549. It is unclear from the record whether this is the same Evaluation that the previous ARD committee employed and reported as being performed on September 12, 2005, and then issued on September 26, 2005. *Compare* R. at 517 *with* R. at 549.

"offering additional sessions during the day, after-school sessions, or speech camps during the summer." *Id.* Despite the assertions made in Dr. Garcia's letter, no additional ARD Committee meetings were convened on A.L.'s behalf to determine compensatory services for the 2006–07 school year. Facts ¶ 5. Nor was A.L. provided any extra speech sessions during the 2006–07 school year, and A.L. was not provided a speech camp in the summer of 2007. *Id.* ¶ 5.

On October 2, 2007, Plaintiff was mailed a notice of the annual ARD Committee meeting, which she subsequently signed her consent to attend. R. at 456–57. On October 5, 2007, the ARD Committee met for its annual review of A.L.'s IEP. *Id.* at 755–795.[6] The minutes of the meeting show no discussion by EPISD of A.L.'s compensatory services, nor does it indicate that Plaintiff requested them.[7] *Id.* However, the ARD Committee determined that A.L. no longer qualified for special education services. *Id.* at 789. This was not based on a new Speech/Language Evaluation, the last of which was conducted in September 2005, but was based on observations provided by A.L.'s current middle-school instructors and statements from A.L.'s speech pathologist. Based on the latter observations, the ARD Committee determined that A.L. no longer required speech therapy. *Id.* at 756, 789–90. Plaintiff objected to "the committee's overall opinion" and requested an additional evaluation of A.L. *Id.* at 789–90. EPISD

agreed to recess the meeting and re-convene on October 22, 2007, after a re-evaluation was completed. Pl.'s Facts ¶ 8; Def.'s Facts ¶ 8. The Committee specifically recommended that A.L. undergo a formal evaluation for speech and language needs. R. at 789–90. Plaintiff consented in writing to this evaluation. *See* Notice of Full and Individual Evaluation, Oct. 5, 2007 (R. at 634–40).

Nevertheless, after giving her consent to A.L.'s reevaluation, on October 10, 2007, Plaintiff filed a Complaint and Request for a Due Process Hearing ("Due Process Complaint"). R. at 480–86; 20 U.S.C. §§ 1415(b)(6), (7)(A), (c)(2). In the Due Process Complaint, Plaintiff alleged that EPISD never convened an ARD Committee meeting to determine compensatory services to which A.L. was entitled, and further failed to provide any promised compensatory services. R. at 483. Plaintiff further alleged that EPISD's "fraudulently misrepresented to [Plaintiff] that compensatory services would be provided" and that these misrepresentations deprived A.L. of a FAPE, because Plaintiff "could not have discovered the lack of speech therapy for [A.L.] until October, 2007." *Id.* As part of her Proposed Resolution in the Due Process Complaint, Plaintiff requested that EPISD be ordered to continue to provide A.L. with special education services, provide A.L. with the promised compensatory services, and conduct an additional ARD committee meeting to develop goals for the compensatory

---

6. The "Final Version" of the ARD committee meeting in the Administrative Record is dated both October 5, 2007 and November 1, 2007. All the boxes on all pages of the report in the Administrative Record have been shaded in, removing any indication of the committee's initial determinations. *See id.* There are, however, hand-written minutes indicating from which meeting certain decisions were made. *Compare* R. at 788–90 (Oct. 5, 2007) *with* R. at 791–94 (Nov. 1, 2007).

7. In addition, Josefina C. Rios, diagnostician at Henderson Middle School, and Karin De La Fuente, A.L.'s speech pathologist, both attended the October 5, 2007, ARD Committee meeting, and both state that Plaintiff made no mention of missed therapy services and did not otherwise request those services at the meeting. *See* Def.'s Resp. Ex. D (Rios Aff.), F (de la Fuente Aff.).

speech therapy. *Id.* at 484. Plaintiff also requested attorney's fees. *Id.*

On October 15, 2007, counsel for Plaintiff sent counsel for EPISD a letter, requesting that all communications from EPISD to his client go through him and that EPISD cease from communicating with Plaintiff directly. *Id.* at 672. On October 18, 2007, counsel for Plaintiff sent another letter to EPISD's counsel, stating that he would be unavailable for the October 22, 2007, ARD Committee meeting, and that he wished to cancel it. Def.'s Resp. Ex. B–1.

On October 19, 2007, pursuant to Plaintiff's written consent, a Speech/Language Evaluation Report was completed and provided to Plaintiff through her attorney. R. at 641–47. The results of the Evaluation concurred with the ARD Committee's conclusion that A.L. no longer met eligibility criteria for special education services as a student with a speech impairment. *Id.* at 645. The Evaluation also recommended additional assessment to determine whether A.L. met eligibility criteria for special education services as a student with a learning disability or other health impairment for Attention Deficit/Hyperactivity Disorder. *Id.*

On October 20, 2007, EPISD sent Plaintiff by facsimile (through her counsel) its "Response to [Plaintiff's] Request for Due Process Hearing" ("Due Process Response"), pursuant to 20 U.S.C. § 1415(c)(2)(B).[8] *See id.* at 449–469. In its Due Process Response, EPISD admitted that it failed to provide A.L. with the

required sixty minutes per week of speech therapy in the fall of 2006. *Id.* at 452. However, EPISD also stated that in that January 2007, EPISD retained a new speech therapist and resumed scheduled services. *Id.* EPISD further argued that all statutory prerequisites were met regarding prior written notice, pursuant to 34 C.F.R. § 300.503;[9] that all claims arising prior to October 10, 2006, were barred by the statute of limitations; and that Plaintiff had failed to exhaust her administrative remedies. R. at 449–50.

Included in EPISD's Due Process Response was a document entitled "Prior Written Notice" ("PWN"). *Id.* at 465–69. In the PWN, EPISD proposed to reconvene the ARD committee meeting which was started on October 5, 2007, in order to complete the annual review of Plaintiff's IEP. *Id.* at 465. EPISD also proposed to further evaluate A.L. to determine whether A.L. continued to qualify for special education services either for speech or based on another disability. *Id.* at 465–66. The PWN stated that a speech evaluation report was completed on October 19, 2007, in preparation for the October 22, 2007, ARD Committee meeting (now postponed). *Id.* at 467. The PWN further indicated that the speech evaluation report indicated that A.L. no longer had a speech impairment. *Id.* at 467.

On October 22, 2007, EPISD forwarded Plaintiff's counsel a copy of all speech therapy logs for A.L. for services provided between October 2005, and October 18, 2007. *Id.* at 681–715. On October 31,

---

8. The Response's Certificate of Service shows a copy of the Response was also sent by certified mail to Plaintiff's counsel on October 22, 2007. R. at 454.

9. Pursuant to 34 C.F.R. § 300.503, a school district is required to provide a child with a disability prior written notice "in understandable language" any time the school:

(1) Proposes to initiate or change the identification, evaluation, or educational placement of the child or the provision of FAPE to the child; or
(2) Refuses to initiate or change the identification, evaluation, or educational placement of the child or the provision of FAPE to the child.

34 C.F.R. § 300.503(a).

2007, EPISD provided Plaintiff with the speech therapy logs for August 2005 and September 2005. Def.'s Resp. Ex. B–4.

On October 25, 2007, EPISD provided Plaintiff (through her attorney) a letter which indicated that A.L.'s ARD Committee meeting would be reconvened November 1, 2007, in order to accommodate Plaintiff's counsel's request. Def.'s Resp. Ex. B–2 (Letter from Evelyn Howard–Hand to Mark Berry, Oct. 25, 2007).[10] The purpose of the meeting was to review A.L.'s most recent Speech–Language Evaluation and to determine whether A.L. continued to meet eligibility criteria as a student with a speech impairment. *Id.* The letter also stated that EPISD

> is proposing a Full, Individual Evaluation [FIE] to determine whether [A.L.] meets eligibility criteria for any disability other than speech impairment. Once that FIE has been completed, [EPISD] would convene an [ARD committee] meeting to review the evaluation, make a determination of eligibility for special education services, and consider the need for compensatory services. The scheduled [ARD committee] meetings, [EPISD]'s proposal to complete an FIE, and [EPISD]'s agreement to consider compensatory services at a duly constituted [ARD committee] meeting is *not* conditioned upon settlement of the [Due Process Complaint], a dismissal of the [Due Process Complaint], or a release of claims. [EPISD] is requesting you and the parent participate in an [ARD Committee] meeting to discuss the issues raised in your complain and any other matters relevant to [A.L.]'s IEP.

*Id.* at 1 (emphasis in original).

The letter also contained a proposed offer to settle the pending due process hearing and all other disputed matters. *Id.* EP-

ISD offered to provide compensatory services "equal to the total time of missed speech therapy sessions for 2006/2007 and this fall," and $5,000 in attorney's fees in exchange for a dismissal of the due process hearing and the execution of a complete release of all related claims. *Id.* at 2. EPISD calculated that A.L. was entitled to 1185 minutes of compensatory speech therapy; however, EPISD stated that "[i]f your calculations indicate additional compensatory services are owed, please advise me so that [EPISD] can consider your information." *Id.*

On October 30, 2007, Plaintiff's counsel responded to EPISD's letter, stating that it understood that the ARD Committee meeting was "cancelled pending our settlement discussions." Def.'s Resp. Ex. B–3 (Letter from Mark Berry to Evelyn Howard–Hand, Oct. 30, 2007). Plaintiff made no additional comment regarding the proposed ARD Committee meeting or EPISD's unconditional proposal to complete A.L.'s FIE. Instead, Plaintiff argued that the form of the proposed Settlement Agreement was inappropriate, that EPISD's calculations for compensatory minutes was incorrect, that A.L. was instead entitled to 2011 minutes of speech therapy, and that her attorney's fees were $9,900. *Id.* at 2.

On October 31, 2007, EPISD's counsel wrote Plaintiff's counsel another letter, stating that the November 1, 2007, ARD Committee meeting had not been cancelled, and she strongly urged Plaintiff to attend the meeting. R. at 744–45. Plaintiff's counsel responded later that day with another letter, stating that he was "perplexed" by the "insistence that the ARD committee meeting scheduled for November 1, 2007 proceed" and identified the

---

**10.** A copy of the ARD notice was also faxed to Plaintiff's counsel on October 25, 2007. *Id.* at 3–5.

meeting as "part of a settlement proposal that has been countered[.]" Def.'s Resp. Ex. B–5 (Letter from Mark Berry to Evelyn–Howard Hand, Oct. 31, 2007). Plaintiff's counsel then asked for the ARD Committee meeting to be delayed to a later date. *Id.*

On November 1, 2005, EPISD reconvened A.L.'s annual ARD committee meeting. R. at 755–95. Neither Plaintiff nor her attorney attended the meeting.[11] *Id.* at 791. The handwritten notes of this meeting indicate that the committee reviewed their previous decision and concluded again that A.L. did not meet the eligibility criteria for being speech impaired. Specifically, the report stated that:

> There is no evidence at the present time that a speech impairment affects the student performance in the regular setting. Student does not currently meet eligibility criteria as a student with a Speech Impairment. Additional assessment has been requested to determine if the student is a student with another disability.

*Id.* at 768.

Nevertheless, the committee recommended that A.L. remain in speech therapy pursuant to the "stay put" provisions of the IDEA, and receive 25 hours of compensatory therapy in English and Language Arts, or one hour per week for the remainder of the school year. *Id.* at 794. The report also recommended A.L. undergo a "[f]ull individual evaluation, including cognitive, achievement and evaluation for [Attention Deficit Hyperactivity Disorder]" on December 7, 2007. *Id.* at 757. This evaluation, however, was "subject to timely receipt of parental consent." *Id.* at 757.[12]

On November 2, 2007, EPISD's counsel sent Plaintiff's counsel a letter responding to Plaintiff's counter-settlement offer. Def.'s Resp. Ex. B–6 (Letter from Evelyn Howard–Hand to Mark Berry, Nov. 2, 2007). In the letter, EPISD stated that "in an effort to settle the disputed claims in the above-referenced matter," EPISD agreed to offer

> one hour of speech therapy services for each hour of therapy that [A.L.] did not receive between the beginning of the 2005/2006 school year and the date of the Agreement, unless the missed services were due to the absence of the student or a school holiday falling on the day that [A.L.] regularly received speech therapy.

*Id.* at 1.

The letter disputed Plaintiff's calculation of missed minutes and proceeded to account what it believed to be the proper number of compensatory minutes. *Id.* at 1–2. The letter further discussed Plaintiff's comments concerning the language of the Settlement Agreement and once again offered $5,000 in attorney's fees. *Id.* at 2–4. Plaintiff never responded to this letter. *See* Def.'s Resp. Ex. B (Howard–Hand Aff.) ¶ 9.

On November 8, 2007, EPISD's counsel sent Plaintiff's counsel another letter, which included the October 5, 2007/November 1, 2007, ARD committee meeting report, EPISD's PWN, and a copy of the Notice of FIE and consent form. R. at 806–76. The letter also indicated that

---

11. EPISD provided prior written notice to Plaintiff (through counsel) that the meeting would proceed. *See* R. at 723–30. However, Plaintiff later testified during the administrative proceeding that her counsel never notified her of the meeting, or the meeting's results. *See id.* at 1180–83.

12. This recommendation appears next to the recommendation for a formal speech evaluation from the October 5, 2007, meeting; however, in reviewing handwritten minutes of the meeting, the former recommendation appears to have been made at the November 1, 2007, meeting. *See* R. at 792.

while the ARD committee meeting indicated different compensatory services than the settlement offer for the pending due process hearing, the settlement offer was still open. *Id.* at 806. On November 16, 2007, EPISD's counsel sent Plaintiff's counsel another letter, this one containing two additional settlement offers. Def.'s Resp. Ex. B–8 (Letter from Evelyn Howard–Hand to Mark Berry, Nov. 16, 2007). Both settlement offers stated that EPISD was "willing to provide one hour of speech therapy services for each hour of therapy [A.L.] did not receive between the beginning of the 2005/2006 school year and the date of the Agreement," and both provided for attorney's fees. *Id.* at 1. Both offers also provided for EPISD to provide an Independent Speech/Language Evaluation. *Id.* In addition, the letter indicated that "the number of hours for compensatory speech therapy services is open for discussion." *Id.* Plaintiff never responded to either of these settlement offers.

On November 13, 2007, EPISD filed an administrative counterclaim, seeking an Order overriding Plaintiff's refusal to consent to a reevaluation of A.L.'s special education needs. R. at 168–73.

On November 21, 2007, EPISD filed a Motion to Dismiss and, in the Alternative, Motion for Summary Judgment regarding Plaintiff's Due Process Complaint. *Id.* at 277–384. In its Motion, EPISD sought dismissal of Plaintiff's claims based on mootness and failure to exhaust administrative remedies. *Id.* EPISD further sought summary judgment based on the statute of limitations. *Id.* On December 6, 2007, Plaintiff filed her Response. *Id.* at 220–71.

On December 7, 2007, before receiving Plaintiff's Response to EPISD's Motion to Dismiss, the Special Education Hearing Officer granted EPISD's Motion to Dismiss. *See* Order Granting District's Motion to Dismiss, Dec. 7, 2007 ("2007 Deci-

sion") (R. at 272–73). The Hearing Officer held that Plaintiff's claims were moot based on EPISD's remedial actions. Specifically, the Hearing Officer found that EPISD "was in the process of correcting the problems raised by petitioner in the complaint prior to this due process complaint being filed." *Id.* at 273. The Hearing Officer also found that EPISD had already offered all relief Plaintiff sought in her Due Process Complaint. *Id.* Accordingly, the Hearing Officer concluded that "[b]ecause all relief sought by [Plaintiff] in the Due Process Complaint had been offered and because the process began prior to [Plaintiff] bringing its complaint," the case should be dismissed. *Id.*

On December 7, 2007, Plaintiff filed a Motion to Reconsider the Hearing Officer's Decision. *Id.* at 199–202. In its Motion, Plaintiff argued that she was not served with EPISD's Motion to Dismiss until November 26, 2007 and had not been given proper notice of a hearing. *Id.* at 199. On December 11, 2007, the parties filed three documents with the Hearing Officer: EPISD filed its Response to Plaintiff's Motion to Reconsider, *id.* at 205–210; Plaintiff filed a Reply to EPISD's Response, *id.* at 215–19; and EPISD filed a Supplemental Response, *id.* at 219. On December 14, 2007, the Hearing Officer denied Plaintiff's Motion to Reconsider.

On February 25, 2008, the parties participated in a Due Process Hearing. *See id.* at 963–1201. On March 19, 2008, the Hearing Officer denied EPISD's counterclaim. *See* Decision of Hearing Officer, Mar. 19, 2008 ("2008 Decision") (R. at 5–13). In its 2008 Decision, the Hearing Officer held that the IDEA only permits the school district to conduct an FIE once a year "without both the parent and the district agreeing to do so." *Id.* at 9 (citing 20 U.S.C. § 1414(a)(2)(B)(i)). Accordingly,

the Hearing Officer held that he did not have the authority to override Plaintiff's refusal. *Id.* at 11.[13]

### C. Procedure in this Court

On March 6, 2008, Plaintiff filed her Original Complaint in this Court. (Doc. No. 1). In her Complaint, Plaintiff seeks review of the Hearing Officer's 2007 Decision. *Id.* at 2. Specifically, Plaintiff argues that EPISD "cannot correct a failure of an IEP by making a promise of compensatory services that is not fulfilled over a one year period." *Id.* ¶ 7. Plaintiff seeks reinstatement of the administrative case before the Texas Education Agency, an order that a hearing be given to A.L., and attorney's fees. *Id.* ¶ 8. On April 9, 2008, EPISD filed its First Original Answer. (Doc. No. 3.)

On April 18, 2008, EPISD filed its Counterclaim and Third–Party Complaint. In its Counterclaim, EPISD seeks review of the Hearing Officer's 2008 Decision and once again seeks an order overriding Plaintiff's refusal to allow A.L. to submit to a reevaluation. *Id.* ¶¶ 39–46. In its Third–Party Complaint, EPISD brings a claim against Plaintiff's counsel seeking attorney's fees as a prevailing party. *Id.* ¶¶ 47–49. EPISD alleges in its Third–Party Complaint that the instant suit was filed to harass, cause unnecessary delay, and needlessly increase the cost of litigation, and that Plaintiff's counsel continued to litigate after the case became frivolous, unreasonable, and without foundation. *Id.*; *see also* 20 U.S.C. §§ 1415(i)(3)(B)(i)(II), (III).

On February 2, 2009, both EPISD and Plaintiff filed their instant Motions. Both parties have filed Responses and Replies.

Throughout the course of both the administrative proceedings and the litigation in this Court, A.L. continues to receive speech therapy pursuant to the "stay put" provisions of the IDEA. *See* 20 U.S.C. § 1415(j); R. at 8, 792–93; Def's Facts II ¶ 20.

## II. DISCUSSION

### A. Standard

Under traditional summary judgment standards, the Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Warfield v. Byron,* 436 F.3d 551, 557 (5th Cir.2006). The substantive law identifies which facts are material. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Ellison v. Software Spectrum, Inc.,* 85 F.3d 187, 189 (5th Cir. 1996). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Ellison,* 85 F.3d at 189.

Moreover, "[the] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548; *Wallace v. Texas Tech. Univ.,* 80 F.3d 1042, 1046–1047 (5th

---

13. The Hearing Officer added that Plaintiff's testimony appeared to indicate that Plaintiff did not seem to understand the reason EPISD sought an override of her consent to conduct an additional FIE. He concluded his analysis with the warning: "As stated in an ancient proverb: Be careful what you wish for, you might get it." R. at 11.

Cir.1996). If the moving party meets its initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e). The nonmovant's burden may not be satisfied by "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Warfield*, 436 F.3d at 557 (quoting *Freeman v. Texas Dep't of Crim. Justice*, 369 F.3d 854, 860 (5th Cir.2004)). Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Thus, the ultimate inquiry in a summary judgment motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505.

■ Under the IDEA, Congress has specifically limited the role of the judiciary, leaving the choice of educational policies and methods in the hands of state and local school officials. *See R.H. v. Plano Indep. Sch. Dist.*, No. 4:06cv352, 2008 WL 906289, at *2 (E.D.Tex. Mar. 31, 2008) (citing *White ex. rel. White v. Ascension Parish Sch. Bd.*, 343 F.3d 373, 377 (5th Cir.2003)); *Flour Bluff Indep. Sch. Dist. v. Katherine M.*, 91 F.3d 689, 693 (5th Cir. 1996). The United States Supreme Court has held that:

> [i]n assuring that the requirements of the [IDEA] have been met, courts must be careful to avoid imposing their view of preferable educational methods upon the States. The primary responsibility for formulating the education to be accorded a handicapped child, and for choosing the educational method most suitable to the child's needs, was left by the [IDEA] to state and local education-

al agencies in cooperation with the parents or guardian of the child. The [IDEA] expressly charges States with the responsibility of "acquiring and disseminating to teachers and administrators of programs for handicapped children significant information derived from educational research, demonstration, and similar projects, and [of] adopting, where appropriate, promising educational practices and materials." § 1413(a)(3). In the face of such a clear statutory directive, it seems highly unlikely that Congress intended courts to overturn a State's choice of appropriate educational theories in a proceeding conducted pursuant to § 1415(e)(2).

*Rowley*, 458 U.S. at 207–08, 102 S.Ct. 3034.

The Fifth Circuit has followed the Supreme Court's guidance, stating unequivocally that the judiciary's "role under the IDEA is purposefully limited." *White*, 343 F.3d at 377.

■ Therefore, while a federal district court's review of a SEHO's decision is "virtually *de novo*," this is not an invitation to "the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Adam J. ex. rel. Robert J. v. Keller Indep. Sch. Dist.*, 328 F.3d 804, 808 (5th Cir.2003) (quoting *Teague*, 999 F.2d at 131); *Rowley*, 458 U.S. at 206, 102 S.Ct. 3034. Instead, the district court must accord "due weight" to the SEHO's findings. *Adam J.*, 328 F.3d at 808 (quoting *Teague*, 999 F.2d at 131). Operationally, the "due weight" standard calls upon the district court to receive the record of the administrative proceedings, to take additional evidence at the request of any party, and ultimately, to reach an independent decision based on a preponderance of the evidence. *See* 20 U.S.C. § 1415(e)(2); *Houston Indep. Sch. Dist. v. Bobby R.*, 200 F.3d

341, 347 (5th Cir.2000); *Michael F.,* 118 F.3d at 252.

In reaching its independent decision, a district court's inquiry is twofold. *Rowley,* 458 U.S. at 206, 102 S.Ct. 3034. First, the reviewing court must determine where the state has complied with the procedures as set forth in the IDEA. *Id.* Second, the district court must determine if the IEP developed through the IDEA's procedures is reasonably calculated to enable the child to receive educational benefits. *Id.* at 206–07, 102 S.Ct. 3034. Where these requirements have been met, Supreme Court precedent holds that "the obligations imposed by Congress and the courts can require no more." *Id.* Procedurally, the text of the IDEA remains silent on the allocation of the burden of persuasion. *Schaffer ex rel. Schaffer v. Weast,* 546 U.S. 49, 56, 126 S.Ct. 528, 163 L.Ed.2d 387 (2005). However, the Supreme Court has held that "[a]bsent some reason to believe that Congress intended otherwise . . . . the burden of persuasion [in an IDEA case] lies where it usually falls, upon the party seeking relief." *Id.* at 57–58, 126 S.Ct. 528.

## B. Plaintiff's Appeal

Plaintiff moves for a reinstatement of her administrative case and for a factual hearing before a Hearing Officer. *See* Pl.'s Mot. 2. Plaintiff argues that the Hearing Officer erred in its 2007 Decision when it held that EPISD has offered all relief sought by Plaintiff's Due Process Complaint, and that the process for offering relief began prior to Plaintiff bringing that Complaint. *See* Pl.'s Mem. in Support of Mot. ¶ 4. Specifically, Plaintiff argues that EPISD made no effort to voluntarily comply with the IDEA, and that all of its settlement offers were conditional. *Id.* ¶¶ 4–5. EPISD reiterates its claims of mootness, failure to exhaust administrative remedies, and the barring of certain compensatory services based on the statute of limitations. *See generally* Def.'s Resp.

Article III of the Constitution allows for the Court to "only adjudicate actual ongoing controversies." *Honig,* 484 U.S. at 317, 108 S.Ct. 592; *Sandoz v. Cingular Wireless, LLC,* 553 F.3d 913, 914 (5th Cir.2008). This means that any case before the Court must continue to present a live "case or controversy" throughout the litigation. *Honig,* 484 U.S. at 317, 108 S.Ct. 592 (citations omitted). Otherwise, it will be dismissed, even if "the dispute between the parties was very much alive when suit was filed," or when appellate decisions were rendered. *Id.* "A controversy becomes moot where, as a result of intervening circumstances, there are no longer adverse parties with sufficient legal interests to maintain the litigation." *Chevron U.S.A., Inc. v. Traillour Oil Co.,* 987 F.2d 1138, 1153 (5th Cir.1993) (citing *Mills v. Green,* 159 U.S. 651, 653, 16 S.Ct. 132, 40 L.Ed. 293 (1859)); *see also Brown v. Bartholomew Consol. Sch. Corp.,* 442 F.3d 588, 596 (7th Cir.2006) ("A case becomes moot when a court's decision can no longer affect the rights of the litigants in the case before them and simply would be 'an opinion advising what the law would be upon a hypothetical state of facts.'") (quoting *North Carolina v. Rice,* 404 U.S. 244, 246, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971)). A court may nonetheless rule on an otherwise moot case if the conduct Plaintiff originally complained of is "capable of repetition, yet evading review." *Brown,* 442 F.3d at 598 (citing *Honig,* 484 U.S. at 318, 108 S.Ct. 592); *Daniel R.R. v. Tex. Bd. of Educ.,* 874 F.2d 1036, 1040 (5th Cir.1989).

It is undisputed that EPISD failed to provide the special education services during the 2006/2007 school year for which the 2006 ARD Committee determined A.L. was eligible. EPISD's Response to Plaintiff's Due Process Com-

plaint 4 (R. at 452) ("[EPISD] admits that [it] failed to provide [A.L.] with the required sixty minutes per week of speech therapy during fall 2006[.]"). It is also undisputed that EPISD Superintendent Lorenzo Garcia promised A.L. compensatory services that A.L. never received. *See* R. at 309.

However, it is also undisputed that the ARD Committee determined first on October 5, 2007, and subsequently on November 1, 2007, that A.L. no longer required speech therapy. *See Id.* at 755–95. In addition, A.L.'s October 19, 2007, Speech Evaluation Report also determined A.L. was no longer speech disabled. *See* PWN (R. at 467). The Hearing Officer noted these conclusions in his 2008 Decisions as undisputed findings of fact. *See* 2008 Decision (R. at 6–8). Plaintiff has not appealed that Decision. Moreover, in her Due Process Complaint and in her judicial Complaint, Plaintiff fails to dispute the ARD Committee meeting's conclusion and the October 19, 2007, Evaluation's conclusion that A.L. is no longer speech disabled. Instead, in both documents, Plaintiff only seeks compensatory speech therapy for services missed prior to these determinations that EPISD promised to provide. *See* Pl.'s Due Process Compl.; Pl.'s Compl. ¶ 7. Neither party has subsequently raised a procedural defect in the manner in which the ARD committee and October 19, 2007, Evaluation reached their conclusions, nor has the Court found one.[14] Finally, neither party has presented evidence that contradicts these conclusions or contested the classroom observations provided by the teachers and speech therapists, A.L.'s grades, or the progress reports that the ARD Committee and Evaluation relied on

to reach these conclusions. Accordingly, the Court finds by a preponderance of evidence that A.L. no longer has a speech impediment which requires EPISD to provide additional speech therapy services.

As a preponderance of evidence demonstrates A.L. is no longer speech impaired, and as Plaintiff has failed to dispute that A.L. no longer has the disability for which she claims compensatory services, Plaintiff's claim for compensatory speech therapy services is moot. *See Thomas R.W. b/n/f Pamela R. v. Mass. Dep't of Educ.*, 130 F.3d 477, 480 (1st Cir.1997) (student's graduation from private school and matriculation into public high school rendered claim for services moot, even when plaintiff continued to seek reimbursement for private services); *Malkentzos v. DeBuono*, 102 F.3d 50, 55 (2d Cir.1996) (holding controversy was moot when plaintiff had "aged out" of and was thus no longer eligible for services under IDEA); *Patskin v. Bd. of Educ. of Webster Cent. Sch. Dist.*, 583 F.Supp.2d 422, 429 (W.D.N.Y.2008) (dismissing claim as moot when student was no longer eligible for special education services); *Dist. of Columbia v. Jeppsen ex rel. M.J.*, 468 F.Supp.2d 107, 112 (D.D.C. 2006) (when there is no "effectual relief" available to plaintiff, "this case must be dismissed as moot").

In addition to the cited legal precedent, equitable considerations oblige the Court to dismiss Plaintiff's claim as moot. Forcing EPISD to provide A.L. compensatory services would be a waste of EPISD resources that could be better used in providing children (including A.L.) with services they may in fact need in order to treat disabilities from which they in fact

---

**14.** Plaintiff does raise alleged procedural flaws in her Response regarding the process in which EPISD sought an additional evaluation to determine what, if any, special education services A.L. was still eligible for. *See* Pl.'s Resp. 3–6. However, none of her arguments call into question the procedural validity of the ARD committee's initial meeting, its conclusions, or the October 19, 2007, Evaluation to which Plaintiff consented at the October 5, 2007, meeting.

suffer. One of the primary goals of the IDEA is "to ensure that all children with disabilities have available to them a [FAPE] that emphasizes special education and related services *designed to meet their unique needs* and prepare them for further education, employment, and independent living[.]" 20 U.S.C. § 1400(d)(1)(A) (emphasis added). Compensatory services in an area for which A.L. exhibits no disability does nothing to further this goal.

 Ultimately, providing additional compensatory speech therapy services for A.L. when A.L. has no speech disability would serve only as a form of damages, a remedy that is not appropriate under the IDEA. *See Marvin H. v. Austin Indep. Sch. Dist.,* 714 F.2d 1348, 1356 (5th Cir. 1983) (holding that "appropriate relief" under the IDEA predecessor "generally only includes prospective relief and that a damage remedy is not generally consistent with the goals of the statute"); *Sellers by Sellers v. Sch. Bd. of City of Manassas, Va.,* 141 F.3d 524, 525 (4th Cir.1998) (holding that the IDEA is "not a forum for tort-like claims of educational malpractice" and did not create a private cause of action).

Nor does the instant case fall under the "capable of repetition, yet evading review" exception to the mootness doctrine. *See Honig,* 484 U.S. at 318, 108 S.Ct. 592. As A.L. no longer suffers from a speech impediment, it is neither likely nor probable that he will be denied a FAPE in the future based on EPISD's failure to provide him with speech therapy services. Moreover, as Plaintiff has refused to allow A.L. to be re-evaluated to determine what, if any, additional services A.L. may need, it is impossible to predict whether A.L. will be in a future position to be denied a FAPE based on EPISD's failure to provide other additional IDEA services. *See Jeppsen,* 468 F.Supp.2d at 112 n. 5 (finding no exception to mootness doctrine when it was likely plaintiff's IEP would soon

change) (citing *Spencer v. Kemna,* 523 U.S. 1, 17, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998)). Accordingly, the Court holds that the Hearing Officer did not err in holding this case to be moot.

As the Court dismisses Plaintiff's claim based on mootness, the Court does not address whether Plaintiff's claim fails for failure to exhaust administrative remedies, or whether any claims are barred by the statute of limitations.

### C. Defendant's Appeal

The Court next reviews EPISD's Motion, in which it seeks to overturn the Hearing Officer's 2008 Decision. *See* Def.'s Mot. ¶ 11. Defendant argues that the Hearing Officer's 2008 Decision was legally erroneous that he lacked authority under the IDEA to override Plaintiff's consent and require reevaluation to determine what, if any, special education services he may need. *Id.* ¶¶ 40–41.

 The IDEA states that "[a] local agency shall ensure a reevaluation of each child with a disability is conducted ... if the local educational agency determines that the education or related services needs, including improved academic achievement and functional performance, of the child warrant a reevaluation[.]" 20 U.S.C. § 1414(a)(2)(A)(i). However, "[a] reevaluation ... shall occur ... not more frequently than once a year, unless the parent and the local educational agency agree otherwise[.]" *Id.* § 1414(a)(2)(B)(i). Parental consent for a reevaluation "need not be obtained if the local education agency can demonstrate that it had taken reasonable measures to obtain such consent and the child's parent has failed to respond." *Id.* § 1414(c)(3). However, if a parent does respond to a school district's notice to reevaluate a child by refusing to provide consent, the district may seek an override of the parent's consent through

its own due process complaint. *See Shelby S ex rel. Kathleen T v. Conroe Indep. Sch. Dist.*, 454 F.3d 450, 455 (5th Cir.2006) ("We ... conclude that where a school district articulates reasonable grounds for its necessity to conduct a medical reevaluation of a student, a lack of parental consent will not bar it from doing so.").

■■■■ Plaintiff argues that she refused to consent to EPISD's Notice of FIE on October 25, 2007, because the notice was procedurally flawed. Pl.'s Resp. 5. Specifically, Plaintiff argues that EPISD failed to identify the additional data that was needed for a reevaluation, as required by 20 U.S.C. § 1414(c), and that EPISD failed to seek her input for the FIE. *Id.* Plaintiff never raised these procedural issues before the Hearing Officer. Because Plaintiff failed to raise such arguments before the Hearing Officer, Plaintiff failed to exhaust her administrative remedies and the Court will not address these arguments. *See* 20 U.S.C. § 1415(*l*) (party must exhaust administrative remedies before brining judicial complaint); *Gardner v. Sch. Bd. Caddo Parish*, 958 F.2d 108, 111–12 (5th Cir.1992) (party seeking to avoid dismissal for failure to exhaust administrative remedies bears burden of demonstrating futility or inadequacy of administrative review); *Rafferty v. Cranston Pub. Sch. Comm.*, 315 F.3d 21, 25–25 (1st Cir.2002) (failure to raise claims of improper procedural safeguards before hearing officer at due process hearing were waived); *Marshall Joint Sch. Dist. No. 2 v. C.D.*, 592 F.Supp.2d 1059, 1086 (W.D.Wis.2009) (failure to challenge appropriateness of IEP at administrative hearing waives challenge before hearing officer).

■■■■ Plaintiff further argues that the Hearing Officer did not have the authority to override her lack of consent to a reeval-

uation because § 1414(a)(2)(B) allows for the district to conduct a reevaluation only once a year unless a parent consents. Pl.'s Resp. 5–6. However, a review of the IDEA shows that this provision restricts the school district's authority to conduct a reevaluation absent parental consent, but does not restrict a Hearing Officer or reviewing court from overriding lack of parental consent. Section 1414(c)(3) states that a district "shall obtain informed parental consent, in accordance with subsection (a)(1)(D) of this section, prior to conducting any reevaluation of a child with a disability[.]" Subsection (a)(1)(D)(ii) states, that if a parent of a child does not provide consent for an evaluation, the district may pursue an override of the parent's decision by utilizing the due process procedures in § 1415, precisely as EPISD did here.[15] The implementing regulations of the IDEA further state that a Hearing Officer has the authority to override lack of parental consent for a reevaluation. *See* 34 C.F.R. § 300.300(a)(3) (allowing for a district to seek override by due process hearing if parent does not provide consent for initial evaluation); 34 C.F.R. § 300.300(c)(1)(ii) (applying the consent override procedures of subsection (a)(3) to reevaluations); 34 C.F.R. § 300.507 (outlining the due process complaint procedures). None of these statutory provisions or regulations cite to the one-year limitation in § 1414(a)(2)(B) as a limitation on the Hearing Officer's or the reviewing court's exercise of equitable powers to override parental consent. Accordingly, given the one-year limitation's placement in the statutory scheme, the limitation appears only as a restriction on the school district's right to proceed with a reevaluation without parental consent, and not on the authority of a Hearing Officer or re-

---

**15.** While subsection (a)(1)(D)(ii) states that it applies to initial evaluations, § 1414(c)(3) states that subsection (a)(1)(D) also applies to reevaluations.

viewing court to override that lack of consent. This is particularly relevant in a case such as this one, where failure to reevaluate A.L. for more than a year has resulted in A.L. continuing to receive services he does not need but potentially depriving him of services he may need.

Regardless of whether the Hearing Officer or this Court could override Plaintiff's lack of consent for EPISD to conduct a reevaluation in 2007 or 2008, the one-year limitation in § 1414(a)(2)(B) has long since expired. EPISD is now entitled, indeed obligated, to conduct an FIE because it has determined A.L. warrants such a reevaluation. *See* 20 U.S.C. § 1414(a)(2)(A)(i); *id.* § 1414(c)(3); Oct. 5, 2007/Nov. 1, 2007 ARD Committee meeting (R. at 792); Evaluation, Oct. 19, 2007 (R. at 641–47).

Interestingly, Plaintiff herself has testified that she wants A.L. to continue to receive special education services, regardless of whether A.L. qualifies as a child with a speech impediment or as a child with some other disability. *See* Pl.'s Test., Feb. 25, 2008 (Due Process Hearing) 215:21–216:4, 223:21–224:15, 229:9–11 (R. at 1176–77, 1184–1185, 1190). Given the undisputed decision of EPISD that A.L. no longer qualifies for speech therapy, and given Plaintiff's clear desire to keep A.L. in special education services, it is unclear why Plaintiff continues to withhold her consent. The Court must conclude, as did the Hearing Officer, that it "does not believe the parent understands why the district is seeking to override the lack of parental consent[.]" 2008 Decision 8 (R. at 11). Regardless of Plaintiff's understanding, EPISD has found a reevaluation necessary, and A.L. has a continued interest in receiving special education services. The Court therefore overrides Plaintiff's lack of consent to a reevaluation.

Of course, Plaintiff may continue to refuse consent for a reevaluation. *See Shel-*

*by S.,* 454 F.3d at 455. But then EPISD "shall not be considered to be in violation of the requirement to make available a [FAPE]" for A.L. *See* 20 U.S.C. § 1414(a)(1)(D)(ii)(III)(aa). Plaintiff is also not obligated to accept any disability services the IEP team determines may be necessary after such an evaluation, and Plaintiff may withdraw A.L. from all additional services. *See id.* § 1414(a)(1)(D)(i)(II); 34 C.F.R. § 300.300(b)(4). What Plaintiff may not continue to do, however, is assert that A.L. is entitled to special education services while simultaneously refusing to allow EPISD to evaluate A.L. to determine what those services may be. *See Andress v. Cleveland Indep. Sch. Dist.,* 64 F.3d 176, 178 (5th Cir.1995) ("If a student's parents want him to receive special education under IDEA, they must allow the school itself to reevaluate the student . . . ."); *see also Gregory K. v. Longview Sch. Dist.,* 811 F.2d 1307, 1315 (9th Cir.1987) ("If the parents want Gregory to receive special education under [the predecessor to the IDEA], they are obliged to permit [a reevaluation].").

## III. CONCLUSION

In conclusion, the Court holds that because A.L. no longer qualifies for speech therapy services, Plaintiff's appeal for compensatory services is moot. Accordingly, Plaintiff's Motion (**Doc. No. 20**) is **DENIED** as moot and Plaintiff's claim is **DISMISSED**.

Moreover, Plaintiff shall either consent to a new evaluation, or A.L. shall cease to be entitled to special education services. EPISD's Motion (**Doc. No. 27**) seeking an override of Plaintiff's lack of consent is therefore **GRANTED** on the grounds set forth in this Order.

As the Court made no use of Plaintiff's disputed evidence in determining the out-

come of this Motion, Defendant's "Objections to and Motion to Strike Plaintiff's Exhibits and Affidavit in Support of Plaintiff's Motion for Summary Judgment" (**Doc. No. 24**) is **DENIED** as moot.

Similarly, EPISD's "Motion to Strike Plaintiff's Reply to EPISD's Response to Plaintiff's Motion for Summary Judgment" (**Doc. No. 36**) is also **DENIED** as moot.

**SO ORDERED.**